# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| | No. 01-85027 MGD |
| PAC ONE, INC., | Judge Diehl |
| Debtor, | |
| C. RICHARD MCQUEEN, Trustee of Pac One, Inc., | Adversary Proceeding No. 05-06353 |
| Plaintiff, | |
| v. | |
| | 1:06-cv-118-WSD |
| ALLEN D. BARNES, WILLIAM A. DAVIES, JAMES A. O'DONNELL, EDWIN A. WAHLEN, JR., JOSEPH G. ANDERSEN, GARRISON M. KITCHEN, CRAVEY, GREEN & WAHLEN, INC., a Georgia corporation, KRISTI HESTER, GEORGE A. GIALENIOS, PACKAGING ACQUISITION CORPORATION, a Georgia corporation, CGW SOUTHEAST PARTNERS III L.P., a Delaware Limited Liability Corporation, CGW, INC., and JOHN AND JANE DOE, who are parties yet to be named, | |
| Defendants. | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendants' Joint Motion to Dismiss [6] and Plaintiff's Motion to Amend [7].[1]

## I.    BACKGROUND

This case is an adversary action arising out of the bankruptcy proceedings of Pac One, Inc. ("Pac One").  On August 22, 2001, Pac One filed a voluntary petition for Chapter Eleven Bankruptcy in this district.  On October 31, 2001, Plaintiff C. Richard McQueen was appointed Pac One's bankruptcy trustee.  On November 21, 2001, Pac One's Chapter 11 bankruptcy was converted to a Chapter 7 bankruptcy, and on January 14, 2002, Plaintiff was reappointed as Trustee in the Chapter Seven case.

On August 17, 2005, Plaintiff filed suit against a Pac One's parent corporation, Packaging Acquisition Corporation ("PAC"), PAC's stockholders, and individual directors of Pac One and PAC ("Defendants").  The Complaint alleges that PAC and various Cravy, Green & Whaley entities named as

---

[1] Although the parties submitted written documents outside of the pleadings, the Court excludes them from consideration.  The Court considered only the pleadings and arguments of the parties.  This Motion is therefore not required to be converted into a motion for summary judgment.  Fed. R. Civ. Pro. 12(b).

Defendants ("CGW") who appear to be PAC or Pac One's controlling shareholders, controlled the composition of Pac One's five-member board of directors.  Plaintiff alleges that several Pac One directors were, at the time of their appointment, officers of PAC or of CGW.  Plaintiff alleges that PAC, CGW, and the appointed directors acted in concert to misuse Pac One's corporate form, and that this misuse drove Pac One into insolvency on October 14, 2000.  Plaintiff claims that Defendants' conduct was motivated by a desire for personal gain.

Plaintiff alleges that Defendants inflated artificially Pac One's credit standing, so that it could obtain third-party loans to continue to pay their salaries and to pay money under contracts with Pac One beneficial to Defendants or their related entities.  Thus, Plaintiff alleges Defendants had a conflict between their pecuniary interest in Pac One's short-term ability to pay money and their fiduciary obligations to Pac One and its creditors.  Plaintiff alleges that Defendants resolved this conflict in a way that benefitted their own interests at the expense of Pac One's interests.

Plaintiff alleges claims for: (1) negligence and gross negligence; (2) breach

of fiduciary duty; (3) fraud; and (4) breach of contract.[2]  Plaintiff alleges that Defendants were negligent or grossly negligent by making multiple accounting errors that misstated Pac One's credit worthiness, including by misstating that Pac One owned certain equipment that it only leased, overstating the value of Pac One's inventory, and submitting false "Base Borrowing Certificates" to creditors. This conduct is alleged to have resulted in economic harm beginning at least on October 14, 2000, the date of insolvency.

Plaintiff also alleges that Defendants breached their fiduciary duty by exposing Pac One "to unreasonable business risks" and incurring "needless expenses."   Plaintiff argues that the individual defendants and PAC violated their fiduciary duties by breaching the terms of a July 20, 2001 employment agreement between Defendant Andersen and Pac One that, in essence, established that Andersen and the other directors owed a fiduciary duty to Pac One.

Plaintiff next alleges that Defendants committed fraud through bookkeeping

---

[2]  Plaintiff's original complaint alleges only four counts: negligence and gross negligence, breach of fiduciary duty, deepening insolvency, and fraud.  The Second Amended Complaint at issue in the present motions eliminates the "deepening insolvency count" and adds a claim for "breach of contract."  Because Plaintiff abandoned the "deepening insolvency" count, the Court will not consider Defendants' motion to dismiss it.

misstatements and false Base Borrowing Certificates, as noted above.  Plaintiff further claims that Defendants Barnes and Andersen made false statements in the bankruptcy petition, and that Defendants acted to conceal from the Trustee causes of action owned by Pac One's bankruptcy estate.

Finally, Plaintiff alleges breach of contract.  Plaintiff claims that Defendant Andersen and the other individual defendants violated the terms of a July 20, 2001 contract between Andersen and Pac One, which required Andersen to discharge his fiduciary duties to Pac One.

## II.    DISCUSSION

### A.    Standard on Motion to Dismiss

The law governing motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is well-settled.  Dismissal of a complaint is appropriate only "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  "Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist."  Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1270 (11th Cir. 2002), rev'd on other grounds, 314

F.3d 541 (11th Cir. 2002) (en banc).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor.  Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007).  Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

Plaintiff, in response to the Motion to Dismiss, filed a proposed Second Amended Complaint.  The Second Amended Complaint alleged new facts and new causes of action.  Federal Rule of Civil Procedure 15(a) provides:

6

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Plaintiff filed his Motion to Amend well after Defendants filed their Motion to Dismiss, thus leave of the Court is required to amend. Generally, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject to relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). A court should not deny a motion for leave to amend unless it has a "substantial reason" to do so, such as "undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party . . . [or] futility of the amendment." Id.; see also Amick v. BM & KM, Inc., 275 F.Supp. 2d 1378, 1381 (N.D. Ga. 2003).

In order for Defendants to prevail on their Motion to Dismiss, they must show that even if the proposed amendments are allowed, the Second Amended Complaint is still subject to dismissal. Hall v. United States Ins. Co. of Am., 267

7

F.3d 1255 (11th Cir. 2004).  The Court concludes that they have done so.

      B.    <u>Motion to Dismiss</u>

      1.    <u>*Statute of Limitations*</u>

Defendants argue that the complaint should be dismissed because its claims fall outside of the applicable statutes of limitation.  The bankruptcy code provides:

> If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of--
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) two years after the order for relief.

11 U.S.C. § 108(a).

The date of the order for relief is in this case the date of the filing of the bankruptcy petition, August 22, 2001.  11 U.S.C. § 301(b).  Plaintiff filed suit on August 17, 2005, nearly four years later.

Actions for injuries to personalty or damage to property are subject to a four-year statute of limitations.  O.C.G.A. §§ 9-3-31, 9-3-32.  It is undisputed that claims for negligence, misrepresentation, and fraud are subject to this four-year limitations period. <u>See</u>, <u>Nash v. Ohio Nat'l Life Ins. Co.</u>, 597 S.E.2d 512, 515 (Ga.

8

Ct. App. 2004); Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 479 S.E.2d 727, 729 (Ga. 1997).  There is no specific statute of limitations for actions for breach of fiduciary duty generally.  Where no specific statute of limitation inheres, the limitations period is defined by the nature of the injury. Reaugh v. Inner Harbour Hosp., Ltd., 447 S.E.2d 617, 619 (Ga. Ct. App. 1994).

Georgia law states that statutes of limitation generally begin to run when the facts giving rise to the claim occur, regardless of when a plaintiff discovers them. Metlife v. Wright, 470 S.E.2d 717, 718 (Ga. Ct. App. 1996).  The limitations period accrues when the injury complained of is first sustained.  Autumn Trace Homeowners Ass'n, Inc. v. Brooks, 517 S.E.2d 836, 837 (Ga. Ct. App. 1999). Even if a tort or negligence is continuing, the statute of limitations generally accrues from the happening of the injury.  Georgia Power Co. v. Moore, 170 S.E. 520 (1933).  Although the injury must be concrete rather than speculative for the clock to begin to run, plaintiff's ignorance of the facts constituting a cause of action does not toll it.  Metlife, 470 S.E.2d at 718.

Defendants argue that the Second Amended Complaint should be dismissed as untimely under the relevant four-year statute of limitation.  Under Georgia law, Plaintiff's claims all allege economic damage to personalty, and are thus subject to

9

a four-year statute of limitation.  Because it is undisputed that Pac One began to suffer actual economic losses from the conduct complained of prior to August 17, 2001, Defendants argue that these claims are barred.

Plaintiff argues that the claims are timely because: (1) the limitations period should be tolled because no one was capable of suing on these claims until the Petition was filed on August 22, 2001, within the limitations period; (2) the limitations period should be tolled in light of Defendants' fraud or fraudulent concealment; (3) the limitations period should be tolled because damages were not certain until the petition was filed; (4) a ten-year statute of limitation should apply to the breach of fiduciary duty claim; and (5) a six-year statute of limitations should apply to the breach of contract claim.[3]

a.      *No one capable of suing on claims*

Plaintiff first argues that his claims are timely because no trustee could have been appointed to sue on the claims until the bankruptcy petition was filed. Plaintiff appears to claim that the underlying limitations periods should be tolled

---

[3] Defendants also argued that Pac One's Articles of Incorporation exculpate the Pac One directors and that the complaint fails to allege any allegations regarding Defendant Garrison M. Kitchen.  Because the complaint was dismissed in its entirety on other grounds, the Court did not reach these arguments.

until the date of the Petition simply because it would have been unlikely for Pac One to sue PAC, CGW, or its own directors before that time.  Plaintiff presents no authority in support of this proposition.

The purpose of a bankruptcy trustee is to stand in the shoes of the debtor company and to file claims it could have filed itself.  In recognition of the unique challenges faced by bankruptcy trustees–which commonly include standing in the shoes of debtors that were controlled by parties that the debtor would otherwise have been economically unmotivated to sue–Congress passed statutes to assist trustees with their duty.  Section 108 is one of these.  If a bankruptcy trustee is appointed while the statutes of limitation on a debtor's claims are running, § 108 grants the trustee a minimum of two years to investigate and decide whether to file those claim, regardless of when the underlying statutes of limitation would otherwise run.  See, Beck v. Deloitte & Touche, 144 F.3d 732, 736 (11th Cir. 1998).

Plaintiff presents no authority for its argument that the statutes of limitation should be tolled because he seeks to sue Pac One's parent, directors, and controlling shareholders.  Plaintiff cites as his sole authority In re City Communications, Ltd., 105 B.R. 1018 (Bnkrptcy. N.D. Ga. 1989).  In that case, a

11

bankruptcy court in this district held that bankruptcy trustees could pursue alter ego claims because "[t]he corporation's alter egos, who by definition control the corporation, could hardly be expected to pursue themselves." Id. at 1022. The Court agrees with this general statement, however, In re City Communications, does not discuss statutes of limitation, nor does its recognition that trustees may bring alter ego claims support Plaintiff's contention that the statutes of limitation should here be tolled. Although Georgia law contains a specific tolling provision for fraud or fraudulent concealment, Plaintiff does not offer any Georgia statute or case for the proposition that statutes of limitation can be tolled on general equitable grounds. See, e.g., Bridge Captial Investors II v. Small, 144 F. App'x. 762, 763 (11th Cir. 2005) ("Notwithstanding the fact that Susquehanna was not a party to the 1990 Small Agreement-and thus cannot possibly have induced Small to enter into it-the statute of limitations began to run on the date that the parties executed the contract.").

The simple fact is that Pac One itself, through its directors and stockholders, is the perpetrator in Plaintiff's pleadings. The legal fiction of a "trustee" is that he stands in Pac One's shoes. Pac One knew of the existence of these allegations well before the date of the Petition, and they resulted in harm at least as of October 14,

2000, when Pac One reached insolvency.

b.   *Fraud or Fraudulent Concealment Tolling*

Plaintiff next argues that the fraud he alleges should toll the statutes of limitation that apply here.  Plaintiff specifically argues that the statutes of limitation should be tolled because "Defendants . . . prepared and submitted false, inaccurate and misleading 'Borrowing Base Certificates' to lenders . . . . after August 21, 2001" and because "Defendants exercised such control over Pac One that the entity itself was incapable of seeking redress until a Trustee was appointed."

Fraud can toll statutes of limitation under Georgia law in two separate circumstances.  Fraudulent concealment of a claim can toll a statute of limitation if it "debars and deters the plaintiff from bringing his action."  O.C.G.A. § 9-3-96. To toll a statute of limitations for fraudulent concealment, a plaintiff must show:

> (1) actual fraud on the part of the defendant involving moral turpitude, (2) which conceals the existence of the cause of action from the plaintiff, and (3) plaintiff's reasonable diligence in discovering his cause of action, despite his failure to do so within the time of the applicable statute of limitations.

McClung Surviving, Inc. v. Worl, 541 S.E.2d 703, 706 (Ga. Ct. App. 2000).

If actual fraud is the gravamen of the action, however, "the statute of

limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered." Shipman v. Horizon Corp., 267 S.E.2d 244, 246 (Ga. 1980). "No other independent fraudulent act is required to toll the statute." Id. If a relationship of "trust and confidence" exists between the parties, "[f]ailure to exercise reasonable diligence to discover the fraud may be excused . . . ."

Plaintiff does not make a sufficient showing that his claims should be tolled for fraudulent concealment. Plaintiff seeks to assert that Defendants fraudulently concealed these causes of action such that their statutes of limitation should also be tolled. Plaintiff does not make any factual showing in his sparse briefing that Defendants engaged in actual fraud involving moral turpitude to conceal the negligence, breach of contract, or breach of fiduciary duty claims from Pac One, the public, or him.

Plaintiff also does not allege or seek to show that he exercised reasonable diligence to discover these causes of action, despite his failure to do so within the time of the applicable statute of limitations.[4] Plaintiff was Trustee for Pac One for nearly four years before he filed these claims. Plaintiff does not allege any facts to

---

[4] Under 11 U.S.C. § 108, it is undisputed that Plaintiff had at least two years after the Petition date to file suit, regardless of any other statute of limitations.

show that with reasonable diligence he could not have discovered these causes of action within the limitations period, or within the two-year minimum period he was allowed under 11 U.S.C. § 108.

Plaintiff does, however, make a sufficient showing that the statute of limitations should be tolled because of the allegation that Pac One defrauded its creditors generally.  Acts of fraud themselves toll statutes of limitations until they are discovered.  To the extent that Plaintiff's fraud claim alleges that Pac One's creditors were defrauded into overestimating Pac One's creditworthiness, for example, through submission of false Base Borrowing Certificates, the Court understands it to be an alter ego claim, asserted against PAC and the individual Defendants on behalf of the class of all of Pac One's creditors.[5]  Plaintiff's allegations show that Pac One's creditors did not discover the fraudulent Base Borrowing Certificates until after the Petition Date.  Having tolled the date of accrual of the fraud claim until the Petition date, the Court finds that Plaintiff's fraud claim is not barred by the statute of limitations.

---

[5]  Such suits are considered to belong to the debtor's estate under Georgia law in circumstances such as these.  See, e.g., In re Icarus Holding, LLC, 391 F.3d 1315 (11th Cir. 2004).

c.   *Certainty of Damages*

Plaintiff next argues that the statute of limitation did not begin to accrue until the date of the bankruptcy petition because Pac One's damages were "speculative" until that date.  Plaintiff argues that because "insolvency deepened [and] Pac One continued to transact business" prior to the petition, damages were speculative until the petition date.

Pac One's claims accrued when "actual economic losses were incurred with certainty, and not merely as a matter of speculation. . ."  Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 479 S.E.2d 727, 729 (Ga. 1997).  This rule is a corollary of "the general rule set forth in case law that the four year limitation period . . . does not begin to run until an actual injury occurs."  Id.  at 730. Because a plaintiff whose losses are only speculative has not yet suffered an injury, they do not yet have an action, and so their statute of limitations does not yet run. Id. ("Thus, until economic loss was sustained by Hardaway, it did not have a cause of action against Parsons, and the prescriptive period did not begin to run.")

Pac One became insolvent on October 14, 2000.  Pac One suffered an actual injury at least by that date, and could have filed the present action as early as that date alleging its insolvency as the harm.  The statute of limitations thus began to

16

accrue at least by that date.

Plaintiff attempts to argue that Pac One's injuries were "speculative" until the petition because Defendants allegedly deepened the insolvency until that date. That the amount of damages Pac One would ultimately sustain was unknown on October 14, 2000, does not change the undisputed fact that they were injured "with certainty, and not merely as a matter of speculation" by that date. Plaintiff does not present any authority to support the proposition that mere uncertainty as to the amount of damages, rather than the fact of injury, delays accrual of the statute of limitations.

d.   *Breach of fiduciary duty*

Plaintiff next argues that his breach of fiduciary duty claims are subject to a ten-year statute of limitation. Plaintiff argues that O.C.G.A. § 23-2-58 supports a 10-year limitations period. Section 23-2-58, however, merely imposes a duty of good faith on parties involved in confidential relationships. The statute does not state a particular statute of limitations for actions alleging its violation. To the extent that this statute may give rise to a cause of action against PAC, CGW, or

17

other non-director Defendants,[6] Plaintiff provides no authority for the proposition that it is governed by a ten-year statute of limitations.[7]  In the absence of a specific statute of limitation, the four-year limitations period for personalty should apply.  See, Reaugh, 447 S.E.2d at 619.

The breach of fiduciary duty claims asserted by Plaintiff against Pac One's directors, although imprecise, appear to fall within the purview of O.C.G.A. § 14-2-831, which governs derivative proceedings by shareholders or by corporations against their directors.  Such actions are governed by a four-year limitations period.  O.C.G.A. § 14-2-831(b).  As noted above, the breach of duty complained of is the alleged practice of running Pac One deep into unwarranted debt.  It is undisputed that this harm began at least as on October 14, 2000, the date of Pac One's insolvency.

_____

[6] The directors are governed by the Georgia Business Corporation Code, which provides a specific set of duties and standards concerning their conduct. O.C.G.A. § 14-2-830 et. seq.

[7] Plaintiff may be relying on an old verison of O.C.G.A. § 9-3-27, which provided a ten-year statute of limitations for "[a]ll actions against executors, administrators, guardians, or trustees . . ." (1990).  The statute was amended in 1991, and now applies to actions against "executors, administrators, or guardians." Thus, even if Plaintiff had made allegations sufficient to show that the Defendants were the trustees of a constructive trust including the personalty at issue, the ten-year statute of limitations he appears to rely on does not apply.

e.  *Breach of contract*

Plaintiff next argues that a six-year statute of limitations should apply to his breach of contract claim.  Plaintiff asserts that director Defendants Allen D. Barnes, Edwin A. Wahlen, Garrison M. Kitchen, and PAC entered into a contract on July 20, 2001 with Defendant Andersen, employing him as Pac One's Chief Financial Officer.  The contract is alleged to have contained an obligation on Andersen's part to perform his duties faithfully, subject to the supervision of the Board of Directors.  The July 20, 2001, agreement is also alleged to require the Board of Directors to supervise Andersen in the performance of his duties and to communicate Pac One's policies and decisions to him for implementation.  The Second Amended Complaint alleges that Andersen breached the terms of this contract by failing to perform his duties, resulting in Pac One's "financial decline." The Second Amended Complaint also alleges that the directors breached their contractual duties by failing to supervise Andersen properly.

Georgia law provides for a six-year statute of limitations for simple written contracts, accrued from the date the contracts become "due and payable." O.C.G.A. § 9-3-24.  If the contract is partly in parol such that the agreement is not entirely embodied in the writing, then the six-year limitations period does not

19

apply.  Plumlee v. Davis, 473 S.E.2d 510, 514 (Ga. Ct. App. 1996).  A contract that merely creates a fiduciary relationship and general duties without specifying the manner in which those duties are to be carried out is partly in parol.  Id.  ("[The contract] did not specify the manner in which the attorney was to carry out his duties, when suit was to be filed, or numerous other material portions . . .").

The July 20, 2001, contract is partly in parol.  The contractual terms Plaintiff alleges were breached merely establish a fiduciary relationship with general duties and obligations running between the individual Defendants and Pac One.  The manner in which Andersen or the other defendants were required to carry out those duties is necessarily a matter of parol beyond the terms of the writing.  Thus, the six-year statute of limitations does not apply.  A four-year statute of limitations is appropriate, as the type of damage claimed is in personalty.  Id.

### 2. Adequacy of Fraud Pleading

Defendants argue that the Second Amended Complaint's fraud pleading is inadequate.  Federal Rule of Civil Procedure 9(b) sets forth heightened standards for fraud pleading, requiring that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred

generally."  This requirement is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents . . .; (2) the time and place of each such statement and the person responsible for making [them]; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud."  Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997) (citations and quotations omitted).  "Because fair notice is perhaps the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme."  Id. at 1381 (quotations and citations omitted). "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud."  Id.  (citation omitted).  Pleadings are insufficient where they simply lump together all defendants and are "devoid of specific allegations with respect to the separate Defendants."  Id.

The Second Amended Complaint alleges four kinds of fraudulent behaviors: (i) that Defendants submitted false Base Borrowing Certificates on behalf of Pac One; (ii) that Defendant Andersen's July 20, 2001, contract contained covenants not to sue that Plaintiff contends wrongfully protected Defendants from their

breaches of fiduciary duty; (iii) that Defendant Barnes filed a bankruptcy petition containing certain inaccuracies, such as a representation that he was Pac One's president when he had in fact resigned before the representation was made; and (iv) that Defendants Barnes, Andersen, Kitchen, Whalen, Parent, the CGW entities all failed to disclose in the bankruptcy petition claims and causes of action held by Pac One.

None of Plaintiff's claims satisfy Rule 9(b).  The false Base Certificate claims do not provide Defendants with specific information concerning their alleged role in the fraud.  While the claim alleges that Defendant Andersen actually oversaw the preparation and filing of the Certificates, the claim lumps the remaining Defendants together without specifying their roles.  For example, Plaintiff alleges that "Defendants, jointly and severally, engaged in activities and transactions in the name of 'Pac One, Inc.' . . ." that constituted fraud.  This unspecific, generalized pleading as to the many defendants in this case is what Rule 9(b) prohibits.  Even Plaintiff's most specific allegation, that Andersen acted "pursuant to the instructions of the Defendant officers and directors of Pac One . . . as well as [PAC] and the Defendants, CGW Entities" in submitting the false certificates is legally insufficient.  The allegation is little more than a bare assertion

22

that all these Defendants somehow share blame for Andersen's conduct, with no attempt to specify their individualized involvement. Rule 9(b) requires more–much more.

Plaintiff's claims concerning the July 20, 2001 contract do not appear to allege any sort of fraud. Plaintiff does not claim that there were any false representations or omissions made verbally or orally related to the July 20, 2001 contract, nor does he allege how any such misrepresentation harmed Pac One.

Plaintiff's claim regarding inaccuracies in the bankruptcy Petition fails to state a material misrepresentation. Plaintiff claims that the Petition stated that Barnes was Pac One's President and Director when in fact he had retired. Even if this statement was false when made, Plaintiff does not allege that it harmed Pac One or, if so, what harm it imposed. Plaintiff also alleges that Pac One had previously represented that PAC was its parent and sole stockowner, but the Petition showed that the CGW entities owned more than 90% of the stock. Plaintiff does not allege that the Petition included a fraudulent statement, only that it revealed that prior false statements regarding Pac One's ownership had been made. Plaintiff does not make any specific allegations regarding who made these allegedly false statements, simply claiming that they were made by "Defendants in

23

control," and Plaintiff does not allege whether or how this false statement injured Pac One.

Plaintiff's claims that the Pac One directors concealed claims in the Petition also fails for lack of specificity.  The Second Amended Complaint fails to allege what claims or causes of action were concealed, who concealed them, or how they were concealed.

## III.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend [7] is **DENIED** as futile.  Plaintiff's claims would be subject to dismissal as stated above if the amendment were allowed.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion to Dismiss [6] is **GRANTED**.  This case is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff may file a Third Amended Complaint, alleging only the fraud claim, within thirty (30) days of entry of this Order, and Defendants shall file their motions to dismiss within thirty (30) days of the filing of the Third Amended Complaint.

Plaintiff's Third Amended Complaint, should he choose to file one, shall be

a complete and self-sufficient document, and shall not incorporate by reference any portion of previous pleadings.  If Plaintiff chooses to file a Third Amended Complaint, he shall additionally provide the Court with a red-lined copy of the Second Amended Complaint so that the Court may identify each amendment made.

**SO ORDERED** this 17th day of July, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE